**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| THE STATE OF TEXAS and THE STATE OF TEXAS *ex rel.* JKJ PARTNERSHIP 2011, LP,<br><br>Plaintiffs,<br><br>v.<br><br>BRISTOL-MYERS SQUIBB COMPANY, SANOFI-AVENTIS U.S. LLC, SANOFI US SERVICES INC., formerly known as SANOFI-AVENTIS U.S. INC., SANOFI-SYNTHELABO INC., SANOFI S.A., and DOE DEFENDANTS 2 to 100,<br><br>Defendants. | Case No. 2:25-cv-1180 |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Bristol-Myers Squibb Company, Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., and Sanofi-Synthelabo LLC[1] (collectively, the "Companies") hereby give notice of the removal of this action, titled *State of Texas v. Bristol-Myers Squibb Co.*, bearing Cause Number 25-1001, from the 71st District Court, Harrison County to the U.S. District Court for the Eastern District of Texas. As grounds for removal, the Companies state as follows:

## I. INTRODUCTION AND BACKGROUND

1. On November 20, 2025, Plaintiff State of Texas (the "State") and relator JKJ Partnership 2011, LP (together, "Plaintiffs") filed a Petition in the 71st District Court, Harrison County. The Petition seeks recovery under various theories stemming from the Companies'

[1] Plaintiffs incorrectly designated Sanofi-Synthelabo LLC as "Sanofi-Synthelabo Inc."

alleged false or misleading labeling and/or promotion of the prescription drug Plavix. Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Petition is attached to this Notice as **Exhibit A**.

2. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiffs' Petition alleges that Texas paid more in Medicaid funds for Plavix than it should have paid and seeks, among other things, recovery of the full value of those overpayments. This claim will require a determination of whether ***federal*** Medicaid laws permitted Texas to refuse to pay for Plavix prescriptions. Because the Plavix prescriptions at issue are for FDA-approved "on-label" indications, federal Medicaid law in fact ***prohibits*** Texas from refusing to reimburse for them, at least without adhering to strict federal procedures. 42 U.S.C. § 1396r-8(d)(4)(B)–(C). This critical issue of whether and how Plaintiffs' claim is compatible with federal Medicaid law presents a substantial federal question and renders this action removable under 28 U.S.C. § 1331. This is true even though Plaintiffs plead only state law causes of action. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005) ("[T]his Court [has] recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.").

## II. FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

4. The Supreme Court clarified the test required for federal question jurisdiction in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). The Court in *Grable* explained that it is a "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312.

5. As this Circuit has interpreted *Grable*, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Here, each element of federal question jurisdiction is satisfied.

**A. The Court Must Necessarily Decide Actually Disputed and Substantial Federal Questions to Resolve Plaintiffs' Claims**

6. The first three requirements that the Fifth Circuit articulated in *Singh* are met.

7. The claims that Plaintiffs bring under the Texas Healthcare Fraud Prevention Act (the "THFPA") necessarily implicate and will require the interpretation and application of federal Medicaid law. Under the federal Medicaid statute, state Medicaid agencies generally are required to reimburse prescriptions for covered outpatient drugs like Plavix for all "medically accepted indication[s]"—which include the FDA-approved indications contained in the product's labeling—and they cannot decline reimbursements for medically accepted indications unless they adhere to strict federal procedures. 42 U.S.C. § 1396r-8(d)(4)(B)–(C); *see also In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig.*, 123 F. Supp. 3d 584, 607 (D.N.J. 2015) ("*Dickson*") ("[T]he law requires the State to provide coverage for [covered] drug[s] under its plan unless the State complies with one of the exclusion or restriction provisions in the Medicaid Act." (citation omitted)); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007) ("Except in certain narrowly defined situations, states participating in the Medicaid program must cover drugs that are subject to an agreement between the manufacturer and the federal government."). In the alternative, a state Medicaid agency may subject a drug to prior authorization by the agency, but ***only*** if federally mandated requirements are satisfied. 42 U.S.C. § 1396r-8(d)(5); *see also In re Vioxx Prods. Liab. Litig.*, 2010 WL 2649513, at *11 (E.D. La. June

29, 2010) (discussing exceptions for state reimbursement of covered outpatient drugs and the prior authorization program (citing 42 U.S.C. § 1396r-8(d))).

8. Here, Plaintiffs do not allege that any of the Plavix prescriptions at issue were prescribed for anything other than the drug's FDA-approved indications. Rather, their theory is that Plavix "was substantially inadequate or inappropriate when compared to generally recognized standards within the health care industry." Ex. A ¶ 46(A). Plaintiffs further allege that Texas's reimbursement of those prescriptions "wasted billions of dollars from taxpayer-funded healthcare programs like Texas Medicaid." *Id*. at p. 2.

9. Recovering under Plaintiffs' theory thus depends on whether the ***federal*** Medicaid statute authorizes Texas to refuse to pay for the on-label Plavix prescriptions at issue. Indeed, a federal court presiding over a prior Plavix *qui tam* lawsuit—in which Texas was a party—addressed this very issue. In that case, the relator brought claims under the federal False Claims Act and various state analogues (including the Texas Medicaid statute at issue here), alleging that the Companies' false marketing caused physicians to write prescriptions for Plavix that (while on-label) were not "medically necessary." *See Dickson*, 123 F. Supp. 3d at 606–07. Among other allegations, the relator claimed that the Companies engaged in a scheme to falsely promote Plavix as a superior product, when it was no more effective than common aspirin. *See id.* at 610.

10. Judge Freda Wolfson, who oversaw the Plavix multidistrict litigation, analyzed the relator's argument under the federal Medicaid statute to determine whether "a drug prescribed for its on-label, FDA-approved use [could] be found to be not 'medically necessary.'" *Id*. at 608. In a thorough opinion, Judge Wolfson extensively addressed the relevant federal regulatory background, explaining how state reimbursement decisions for covered drugs such as Plavix necessarily turn on questions of federal law. As part of this comprehensive analysis, she

determined that in the absence of a state-specific, federally permitted restrictions, states could not override the federal rule that FDA-approved, on-label drugs ***must*** be covered by state Medicaid programs. *Id*. at 609–10. Ultimately, she dismissed the claims at issue (including that of Texas) because the relator had failed to plead a viable theory of liability given this federal law backdrop. *Id*. at 610.[2]

11. Other courts addressing whether actions brought by states relating to the promotion of, and Medicaid reimbursement for, prescription drugs have also found that such actions necessarily involve federal issues. For example, Judge Jack Weinstein of the Eastern District of New York denied motions to remand in similar actions brought by attorneys general of multiple states involving the prescription drug Zyprexa. The court found that federal jurisdiction lay because the a state's "obligation to reimburse its Medicaid recipients for prescription drugs is essential to the state's theory of damages and presents a substantial and disputed federal issue." *In re Zyprexa Prods. Liab. Litig.*, 2009 WL 691942, at *3 (E.D.N.Y. Mar. 11, 2009); *see also McGraw*, 476 F. Supp. 2d at 233; *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172–73 (E.D.N.Y. 2005).

12. Similarly, in the *Vioxx* multidistrict litigation, the Louisiana Attorney General brought a claim to recover drug reimbursement costs against Merck. Although the attorney general alleged a state cause of action, Judge Eldon Fallon of the Eastern District of Louisiana determined after a bench trial that the state could deny coverage for Vioxx only under the limited exceptions provided by ***federal*** law. *In re Vioxx*, 2010 WL 2649513, at *10–15. Judge Fallon observed, first, that under federal law, a state Medicaid agency may limit or deny coverage of prescriptions for a

[2] The *Dickson* case is more than persuasive authority. It is binding on the State of Texas under the doctrines of *res judicata* and/or collateral estoppel, as the State was a party to *Dickson* and did not appeal it. The State is bound by the result.

covered outpatient drug subject to a rebate agreement in only a limited set of circumstances, as prescribed by federal law. *Id.* at *11 (citing 42 U.S.C. §§ 1396r-8(d)(1), (2), (4)). To prevail on its claim in *Vioxx*, the attorney general had to show that he could have denied the claim using one of the limited mechanisms available under the federal Medicaid statute. Because the attorney general was unable to prove the element of causation, Judge Fallon dismissed the claim. *Id.* at *21–22. The reasoning of these cases apply with equal force here.

13. As in *Vioxx*, Plaintiffs' theory of liability also requires them to establish causation here: that Texas would have refused to pay these on-label claims absent the alleged unlawful conduct. Plaintiffs' Petition states as much: "The State seeks recovery of the value of all payments and/or benefits provided under Texas's healthcare programs, including the Medicaid program, ***as a result of*** Defendants' unlawful acts." Ex. A ¶ 47 (emphasis added). Texas law likewise makes clear that causation is an essential element to recover for alleged overpayments of Medicaid funds. *See* Tex. Hum. Res. Code § 36.052(a)(1) ("[A] person who commits an unlawful act is liable to the state for . . . the amount of any payment or the value of any monetary or in-kind benefit provided under a healthcare program, ***directly or indirectly, as a result of the unlawful act.***" (emphasis added)); *see also, e.g.*, *In re Xerox*, 555 S.W.3d 518, 553 (Tex. 2018) (explaining that recovery under Section 36.052(a)(1) requires a "causal relationship [ ] between the unlawful act and [the] fact of a payment or receipt of a benefit").

14. Plaintiffs cannot hide behind the "well-pleaded complaint" rule to argue that these fundamental federal issues are merely a defense to the lawsuit. It will be Plaintiffs' burden to prove their case, including the element of causation, notwithstanding federal Medicaid law that generally requires states to pay for medications prescribed on-label for FDA-approved indications. As *Grable* explained, the "doctrine [of federal 'arising under' jurisdiction] captures the

commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." 545 U.S. at 312. The federal issues here are not only substantial, but must necessarily be decided. And Plaintiffs must likewise dispute that federal Medicaid law bars their claim—otherwise, their claim fails.[3]

15. In addition, Plaintiffs' Petition implicates multiple other federal issues. As support for their claims, for example, Plaintiffs point to FDA letters concerning the Companies' promotional materials as demonstrating purportedly wrongful conduct. *See* Ex. A ¶ 38 ("Despite repeated warnings from the FDA's Division of Drug Marketing, Advertising, and Communications that Plavix could not be marketed as superior to aspirin, Defendants continued to mislead patient-consumers by claiming that such superiority existed."). Addressing these letters will necessarily involve application of the extensive FDA regulations concerning promotional practices for prescription medications. *See, e.g.*, 21 C.F.R. §§ 202.1, 201.56–57.

16. Plaintiffs further allege that the Companies withheld material information from the FDA. *See* Ex. A ¶ 34 ("The finding that Plavix had a poor responder problem was not shared with the FDA until 2005, seven full years after the conclusions were known to Defendants . . . . [That information] was buried in a large volume of other documents to obscure the lengthy delay in its

[3] To be sure, more than a decade ago, a handful of courts in similar cases—brought by other state attorneys general related to Plavix—granted motions to remand based on a finding of no substantial federal issue. *See Caldwell ex rel. v. Bristol Myers Squibb Co.*, 2012 WL 3866493 (W.D. La. Sept. 4, 2012); *Hawaii ex rel. Louie v. Bristol-Myers Squibb Co.*, 2014 WL 3427387 (D. Haw. July 15, 2014); *West Virginia ex rel. McGraw v. Bristol-Myers Squibb Co.*, 2014 WL 793569 (D.N.J. Feb. 26, 2014). These cases were decided before *Dickson* and therefore did not have the benefit of Judge Wolfson's decision. Nor is there any Fifth Circuit case contradicting the *Dickson* reasoning and decision. *McGraw* is distinguishable for the additional reason that the parties did not brief, and the court accordingly did not address, whether the recovery of Medicaid funds necessarily implicates substantial federal questions. Therefore, the Companies respectfully submit that this Court should follow the *Dickson* decision as to the particular elements that Plaintiffs must meet.

disclosure, as well as its findings."); *id.* ¶ 37 ("Defendants did not bring this information to the FDA's . . . attention . . . nor did Defendants try to warn . . . FDA about the risks associated with Plavix resistance."). Again, these allegations necessarily implicate FDA regulations that address what disclosures must be made to the agency and in what form. *See, e.g.*, 21 C.F.R. §§ 314.50, 314.80, 314.81.

17. Finally, Plaintiffs allege that the Companies made false and misleading statements to the FDA when seeking approval for Plavix. *See* Ex. A ¶ 30 ("When Defendants were seeking approval to conduct the CAPRIE clinical trial they made a commitment to the FDA to study the effects of race during the trial. Yet, when the study was conducted Defendants included only 5% non-Caucasians."). Resolution of Plaintiffs' claims will therefore require a determination whether the Companies, in fact, engaged in practices prohibited under the federal Food Drug and Cosmetic Act (the "FDCA"). All of these federal issues, which are expressly included in Plaintiffs' Petition, further support federal jurisdiction.

**B. Federal Jurisdiction Will Not Disturb State Judicial Responsibilities**

18. The fourth requirement of *Singh* is also met: federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

19. Congress enacted the FDCA to provide for uniform, nationwide regulation of pharmaceutical products. The FDA has the exclusive authority to enforce the FDCA. *See* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter [the FDCA] shall be by and in the name of the United States."). Moreover, the federal government has a substantial interest in the interpretation and application of its Medicaid laws.

20. The risk of disrupting these carefully drawn and intricate federal requirements is particularly great when actions are brought under the auspices of state law enforcement agencies, in an apparent attempt to compete directly with the regulatory authority of the FDA. It is important

that these issues be resolved in a federal forum and not litigated piecemeal in state court. The federal government's historic role in protecting and enforcing FDA labeling standards and Medicaid rules gives it a "direct interest in the availability of a federal forum" for any litigation related to those statutes. *Grable*, 545 U.S. at 315. Under these circumstances, the Court's exercise of federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

21. In addition, the claims in this suit implicate primarily ***federal*** funds because a significant portion of the Texas Medicaid Program's funds are dispensed by the federal government. For example, for the fiscal year 2026, federal dollars will account for approximately 60% of Texas's Medicaid expenditures.[4] Federal interests in enforcing compliance with the relevant laws and regulations governing pharmaceutical promotion predominate over state interests for this reason as well.

22. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' remaining state law claim—that the Companies violated the Texas Deceptive Trade Practices-Consumer Protection Act.

## III. THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED

23. The Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b). The Companies were served with the Petition on November 24, 2025. *See* 28 U.S.C. § 1446(b)(2)(B).

24. All named defendants consent to the removal. *See* 28 U.S.C. § 1446(b)(2)(A). The fictitious Doe Defendants 2–100 are not required to consent to removal. Sanofi S.A. is a foreign company that has not been properly named in the case or properly served. Nevertheless, out of an abundance of caution, Sanofi S.A. has authorized the undersigned counsel to consent to removal

---

[4] *See* Medicaid's Federal Medical Assistance Percentage (FMAP), congress.gov, *available at* www.congress.gov/crs-product/R43847#_Toc194592195 (last accessed Nov. 25, 2025).

on its behalf, and Sanofi S.A. so consents without waiver of any and all potential defenses, including without limitation those pertaining to service and/or personal jurisdiction.

25. The Eastern District of Texas is the federal judicial district encompassing the 71st Judicial District, Harrison County, where this suit was originally filed. *See* 28 U.S.C. § 1441(a).

26. Pursuant to 28 U.S.C. § 1446(d), the Companies are filing a copy of this Notice of Removal with the Clerk of the 71st Judicial District Court, Harrison County, Texas.

27. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers filed in the state court action—as available from the state court docket or otherwise made available to the Companies at the time of filing this Notice—are attached hereto as **Exhibit B**.

28. By filing this Notice of Removal, the Companies do not waive any defense that may be available to them and reserve all such defenses, including but not limited to those related to service of process, lack of personal jurisdiction, and venue.[5] If any question arises regarding the propriety of the removal to this Court, the Companies request the opportunity to present a brief oral argument in support of their position that this case has been properly removed. No previous application has been made for the relief requested herein.

WHEREFORE, the Companies hereby give notice that the above entitled state court action, formerly pending in the 71st Judicial District, Harrison County, Texas, is removed to the United States District Court for the Eastern District of Texas, and requests that this Court sustain that federal jurisdiction exists for all further proceedings in this matter.

[5] Without limitation, the Companies fully preserve and do not waive any arguments that Plaintiffs' action was improperly filed in Harrison County, Texas, including preserving their right to move in this Court for transfer of venue if federal jurisdiction is sustained, or to object to venue in state court if the action were remanded.

Dated: December 1, 2025

Respectfully submitted,

*/s/ Melissa R. Smith*

GILLAM & SMITH, L.L.P.
Harry L. Gillam, Jr.
(Texas Bar No. 07921800)
Melissa R. Smith
(Texas Bar No. 24001351)
303 S. Washington Ave.
Marshall, TX 75670
T: (903) 934-8450
F: (903) 934-9257
gil@gillamsmithlaw.com
melissa@gillsamsmithlaw.com

Andrew Thompson ("Tom") Gorham
( Texas Bar No. 24012715)
James Travis Underwood
(Texas Bar No. 24102587)
7232 Crosswater Ave.
Tyler, TX 75703
T: (903) 934-8450
F: (903) 934-9257
tom@gillamsmithlaw.com
travis@gillamsmithlaw.com

THE VAL JONES LAW FIRM
George Valton Jones
(Texas Bar No. 10888050)
109 W. Austin St.
Marshall, TX 75670
T: (903) 927-2220
F: (903) 927-2093
val@valjoneslaw.com

ARNOLD & PORTER KAYE SCHOLER LLP
Allissa Pollard
(Texas Bar No. 24065915)
700 Louisiana Street, Suite 4000
Houston, TX 77002
T: (713) 576-2400
F: (713) 576-2499
allissa.pollard@arnoldporter.com

Anand Agneshwar (*pro hac vice forthcoming*)
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
anand.agneshwar@arnoldporter.com

Daniel S. Pariser (*pro hac vice forthcoming*)
Paige H. Sharpe (*pro hac vice forthcoming*)
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
daniel.pariser@arnoldporter.com
paige.sharpe@arnoldporter.com

*Counsel for Bristol-Myers Squibb Company, Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., and Sanofi-Synthelabo LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, I filed the foregoing Notice of Removal via the Court's CM/ECF system, which sent a Notice of Filing Activity to all counsel of record. The document is available for viewing and downloading from that system.

**AMY SNOW HILTON (**Texas Bar No. 24097834)
Amy.Hilton@oag.texas.gov
Office of the Attorney General
Healthcare Program Enforcement Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1709

**ANTHONY DOLCEFINO (**Texas Bar No. 24134406)
Anthony.Dolcefino@oag.texas.gov
Office of the Attorney General
Healthcare Program Enforcement Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1709

**KATHERINE PITCHER (**Texas Bar No. 24143894)
Katherine.Pitcher@oag.texas.gov
Office of the Attorney General
Healthcare Program Enforcement Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1709

Samuel F. Baxter
sbaxter@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
**MCKOOL SMITH P.C.**
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000

Eric B. Halper
ehalper@mckoolsmith.com
John C. Briody
jbriody@mckoolsmith.com

Radu A. Lelutiu
rlelutiu@mckoolsmith.com
Ayana Rivers
arivers@mckoolsmith.com
1301 Ave. of the Americas, 32nd Floor
New York, New York 10001
Telephone: (212) 402-9400

Rachael Jones
rjones@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000

Mark Lanier
WML@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Jonathan Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
**THE LANIER FIRM, PC**
10940 W Sam Houston Pkwy N Suite
Houston, Texas 77064
(800) 723-3216

*Attorneys for Plaintiffs*

*/s/ Melissa R. Smith*______________________
Melissa R. Smith